IN THE UNTIED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENNIS I. TERZANI,

Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

Defendant.

Civil No. 05-518-HU

FINDINGS AND RECOMMENDATION

DAVID B. LOWRY
99000 S.W. Greenburg Road, Suite 235
Portland, OR 97223
Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

THOMAS M. ELSBERRY
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075
Attorneys for Defendant

///

HUBEL, Magistrate Judge:

Plaintiff Dennis I. Terzani seeks judicial review of the Social Security Commissioner's final decision that he was not disabled before October 15, 2001. This court has jurisdiction under 42 U.S.C. § 405 (g). I recommend that the Commissioner's decision be affirmed and the case dismissed.

**BACKGROUND**

Mr. Terzani applied for disability insurance benefits (DIB) under Title II of the Social Security Act, alleging an onset date of November 5, 1998. Tr. 83.[1] His application was denied initially and upon reconsideration. Tr. 75, 69. An Administrative Law Judge (ALJ) found that Mr. Terzani became disabled on October 15, 2001, and awarded benefits accordingly. Tr. 27-32. Mr. Terzani appealed, asking that benefits be calculated from November 5, 1998. Tr. 10. The ALJ's decision became final when the Appeals Council denied Mr. Terzani's request for reconsideration. Tr. 6.

Born May 6, 1958, Mr. Terzani completed high school and later entered an Air Force training program in aircraft maintenance. Tr. 103. Between 1986 and 1998 he worked as an aircraft mechanic, drapery hanger, installer of signage and alarms, corrections officer, beer delivery driver, and liquor store clerk Tr. 28, 98.

Mr. Terzani contends he has been disabled since November 5, 1998, after an injury exacerbated a preexisting back problem, caused him to become depressed, and impaired his ability to concentrate. Tr. 97.

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer (Docket #8).

**A. Medical evidence: back injury and disk disease**

Mr. Terzani has a history of degenerative disk disease, with initial injury and laminotomy surgery in 1987.[2] On November 5, 1998, Mr. Terzani lifted two six-packs of beer or soda and reportedly heard a "popping" noise in his back, followed by severe pain that brought him to his knees. Tr. 345, 507. He was seen in the emergency room and diagnosed with two herniated disks in the lumbar spine. Tr. 209, 346. In January 1999 he was diagnosed with "lumbar radiculopathy secondary to disc disease." Tr. 209, 225, 229.

Initial treatment of the acute injury included bi-monthly hydrocortisone injections and physical therapy in January and February 1999. Tr. 221-230; 231-340. At this time Mr. Terzani reported pain in his back and both legs, but his physical therapist noted that he was also making functional gains and complying with treatment. Tr. 257-263.

When Mr. Terzani continued to experience bilateral radicular pain, tingling in his feet, and urinary hesitancy, his primary care physician referred him to a spinal specialist, Dr. Gregorius, for surgery in April 1999. Tr. 233-235. Dr. Gregorius performed a bilateral laminotomy, disc excision and nerve root decompression on April 23, 1999 and Mr. Terzani resumed his physical therapy treatments with continued improvement. Tr. 236, 254.

Mr. Terzani attended physical therapy throughout April, May, and June, 1999. His physical therapist noted that his pain was decreasing and his mobility increasing at this time. Tr. 248-56. In May 1999 he reported his leg pain was gone. Tr. 276. In July 1999 Mr. Terzani began attending physical therapy at a different treatment facility and reported increased pain. Tr. 324. An MRI done

---

[2] The 1987 injury was part of a worker's compensation claim with awards; Mr. Terzani reported the claim was still pending at the time of the present hearing. Tr. 506-544, 58.

in August 1999 showed no evidence of root compression or spinal instability. Tr. 357. At this time Dr. Gregorius concluded that Mr. Terzani was "partially" disabled, but able to return to the workforce in a restricted capacity. Tr. 271. Mr. Terzani was advised to pursue vocational rehabilitation so that he could acquire a job accommodating his reduced physical capacity. Tr. 103. Mr. Terzani attended vocational rehabilitation training and counseling between November 1999 and July 2000. Tr. 125-151.

In December 1999, a second orthopedic surgeon, Dr. Carson, evaluated Mr. Terzani. This evaluation was apparently in relation to Mr. Terzani's worker's compensation claim. Tr. 344. Dr. Carson found that Mr. Terzani presented with a lumbar disc herniation and post-operative disc excision, recurrent scar tissue at the left L5 disc and nerve compression at the S1 disc. Tr. 350. Dr. Carson opined that Mr. Terzani should be restricted from heavy work, but that his condition did not preclude all work. Tr. 350.

In May 2000, Dr. Gregorius cleared Mr. Terzani for work, provided he did not lift more than 25 pounds. Tr. 355. On June 7, 2000, Dr. Gregorius noted Mr. Terzani's report that his condition was worsening. Tr. 354.

In October 2000, Mr. Terzani consulted Dr. Ross, another spinal orthopedic surgeon, regarding a lumbar fusion operation. Tr. 390-2. Dr. Ross noted irregularities in Mr. Terzani's imaging studies, but did not believe these irregularities were responsible for Mr. Terzani's continued symptoms. Tr. 392. Dr. Ross concluded that Mr. Terzani presented with "failed back syndrome," meaning that surgery had been unsuccessful and that the specific cause of his chronic back pain was difficult, if not impossible, to determine. Dr. Ross did not think surgical fusion was a viable course at that time. Tr. 392.

In November 2000, Mr. Terzani began treatment with a spinal pain specialist, Dr. Greenberg, who initiated a course of spinal injections for pain control. Tr. 445-460. In January 2001, Dr. Greenberg noted that Mr. Terzani's condition was improved. Tr. 399. In April 2001, Dr. Greenberg stated, "I see no reason why Mr. Mr. Terzani should not be able to return to work at this time." Tr. 470. In July 2001, Mr. Terzani's current primary care physician, Dr. Countiss, noted that Mr. Terzani was "feeling well" and making efforts to return to work. Tr. 482. In August 2001, Dr. Greenburg wrote a letter stating that the back problems relating to Mr. Terzani's worker's compensation claim were "completely resolved." Tr. 469-70.

On September 14, 2001, Dr. Countiss reported that "apparently Dr. Greenberg in Ashland has discharged him [Mr. Terzani] from his care." Tr. 481. No reason is cited. Mr. Terzani continued to report pain to Dr. Countiss in September and October 2001; Dr. Countiss began treating Mr. Terzani with Vicodin and Oxycontin for pain relief. Tr. 481.

On October 15, 2001, Dr. Countiss wrote that Mr. Terzani reported his pain had "worsened somewhat," and was constant. Tr. 480. In December 2001, Mr. Terzani again reported that his pain was unchanged, and that in addition, he was experiencing difficulty urinating. Tr. 479. Dr. Greenberg administered spinal injections for pain control on October 10, 2001, and in January, April, March and October 2002. Tr. 429-444.

In February 2002, Mr. Terzani reported to Dr. Countiss that his back pain remained constant, though his leg pain was decreasing. Tr. 478. In April, 2002, Mr. Terzani reported continued pain, unresolved by a nerve transection procedure. Tr. 477. Mr. Terzani made similar reports of pain to Dr. Countiss until November 2002, when the record closes. Tr. 473.

///

**B. Mental Impairments**

Mr. Terzani has a documented history of mild depression and anger management dating from 1995. Tr. 303-5. Mr. Terzani began antidepressant medication in 1995, including Zoloft, Prozac and trazadone for depression, impulse control issues and pain. Tr. 102, 271. In 1997, Mr. Terzani asked his primary care physician for a letter stating that he was disabled by depression. Tr. 296. The doctor apparently complied, saying Mr. Terzani's situational depression impaired his concentration. Tr. 287. However, no copy of the letter exists in the present record.

Mr. Terzani's depression is noted throughout the medical records for 1998 and 1999, usually in the context of situational stressors. Tr. 287, 295, 297, 300. In September 2000, Dr. Sasser performed a psychiatric evaluation at the request of Disability Determination Services (DDS), and found Mr. Terzani had an adjustment disorder relating to his back injury, but at that time had no significant depressive issues. Tr. 383. In March 2001, Dr. Greenberg noted that "Dennis does not strike me as being very depressed at this time." Tr. 471. In May 2001, DDS considered his alleged depression to be "non-severe" and did not include it in establishing his residual functional capacity (RFC). Tr. 394, 403, 407, 409.

**DISABILITY ANALYSIS**

The Commissioner engages in a sequential process encompassing one to five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Mr. Terzani challenges the ALJ's evaluation of the evidence and conclusion at step five that he was "not disabled" prior to October 15, 2001.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC

is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545; Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform work in the national economy at step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520.

The initial burden of establishing functional limitations rests upon the claimant. If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Yuckert*, 482 U.S. at 141-2; *Tackett*, 180 F.3d at 1098. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. § 404.1566.

**THE ALJ'S FINDINGS**

The ALJ found Mr. Terzani "partially credible" for the period before October 15, 2001. Tr. 29, 31. Although the ALJ did not find Mr. Terzani presenting "deliberate overstatement," he concluded that Mr. Terzani's testimony focused upon his pain at the time of the hearing rather than in 1998. Tr. 29.

The ALJ assessed Mr. Terzani's RFC as follows:

> The evidence has established that the claimant is limited from lifting and carrying more than ten pounds frequently with an occasional twenty pound maximum. He is limited to occasionally bending, climbing, stooping, crouching, and crawling. He needs an opportunity to change position from prolonged sitting. He has difficulty using foot controls. Begining October 15, 2001, the claimant has been additionally limited from sustaining regular activity

> without an opportunity to recline to relieve pain periodically throughout the day.

Tr. 31.

At step four, the ALJ found Mr. Terzani unable to perform any of his past relevant work. Tr. 31. The ALJ found that Mr. Terzani remained able to perform work existing in the national economy until October 15, 2001, but became unable to make an adjustment to any work in the national economy after that date. Tr. 31. Therefore, the ALJ found Mr. Terzani disabled since, but not before, October 15, 2001. Tr. 31.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989), citing *Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986). This court must affirm the Commissioner if her decision is supported by substantial evidence in the record and if the ALJ applied correct legal standards. *Batson*, 359 F.3d at 1193. The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; see also *Batson*, 359 F.3d at 1193.

**DISCUSSION**

Mr. Terzani contends that the ALJ failed to reach an accurate RFC assessment for the period

between his initial 1998 injury and October 15, 2001, specifically because the ALJ did not properly consider Mr. Terzani's written statements, work history or medical evidence.

**1. Mr. Terzani's credibility and work restrictions prior to October 15, 2001**

The ALJ found Mr. Terzani to be only "partially credible" with respect to the severity of his pain before October 15, 2001. Tr. 29.

In the absence of any evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting a claimant's testimony about severity of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). To determine credibility, the ALJ may consider objective medical evidence and the claimant's treatment history; the claimant's daily activities and work record; and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements by the claimant. *Id*.

The ALJ noted the distinction between Mr. Terzani's current functioning and his abilities between November 5, 1998, and October 15, 2001, and emphasized that prior to October 2001, Mr. Terzani's medical history does not show that he needed to recline several times per day in order to relieve symptoms. Tr. 29, 31. Tr. 470, 471, 482, 483. As described above, Mr. Terzani initially responded well to physical therapy and treatment, and the medical evidence indicates that his physical capacity was increasing and his pain was decreasing during this period. Tr. 248-56. The ALJ also indicates that Mr. Terzani did not view himself as disabled during this period, as he was

completing vocational training and asking his physicians when he might return to work. Tr. 29, 125-51, 470, 480-83.

Mr. Terzani's physicians did not restrict him from all work between November 5, 1998, and October 15, 2001. Tr. 209, 271. During this period Mr. Terzani was cleared for work at least three times by four different treating and evaluating physicians, Drs. Gregorius, Greenberg, Carson and Countiss. Tr. 271, 470, 350, 480-3. Despite this evidence, Mr. Terzani testified at the hearing that he had "never been told I can return to work." Tr. 58.

On June 9, 2003, Dr. Countiss wrote a letter restricting Mr. Terzani from work based on Mr. Terzani's reported limitations. Dr. Countiss noted that "most of my judgments are based on my subjective opinion of his symptoms as relayed by him." Tr. 495. The ALJ partially rejected Dr. Countiss's work restriction, finding it inconsistent with the medical record. Tr. 29, 495. The ALJ may reject a treating or examining physician's opinion that is inconsistent with the opinions of other treating or examining physicians if the ALJ makes findings "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002), citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Dr. Countiss noted that Mr. Terzani's back pain stemming from his 1987 injury had "significantly worsened" in November 1998, but does not specifically indicate when Mr. Terzani's pain increased in the period between November 1998 and October 15, 2001. Tr. 495.

For these reasons the ALJ's findings regarding Mr. Terzani's credibility are sufficiently specific to permit and require this court to conclude they are not arbitrary. *See Batson*, 359 F.3d at 1193.

///

**2. Mr. Terzani's mental impairments**

Mr. Terzani submits that the ALJ did not correctly consider his alleged mental impairments, in particular his history of depression. Absent contradictory evidence by a treating physician, the ALJ may rely upon an examining physician's opinion that is consistent with the record. *See Thomas*, 278 F.3d at 957; see also *Lester v. Chater*, 81 F.3d 821, 830-1 (9th Cir. 1995). The ALJ relied on Dr. Sasser's opinion, who found that Mr. Terzani had an adjustment disorder, but no severe mental symptoms. Tr. 28, 383-8. This evaluation is consistent with the treatment record summarized above, which shows ongoing situational depression, but does not suggest a severe depressive disorder. Tr. 287, 295, 297, 300, 482.

Mr. Terzani apparently relies upon documentation of his depression by his treating physician, Dr. Countiss. But Dr. Countiss does not support Mr. Terzani's allegation of disabling depression during the period under review: he noted in March 2001 Mr. Terzani did not seem very depressed, and in February and November 2002, Dr. Countiss noted that Mr. Terzani's depression was "under good control." Tr. 471, 473, 478. There is no evidence that Mr. Terzani suffered from depression severe enough to require evaluation under 20 C.F.R. § 404.1520a.

**3. Onset date and record development**

Mr. Terzani claims the ALJ failed to acknowledge the significance of his last working day in determining the onset of his injury. Under Social Security Ruling 83-20, the onset date for traumatic injuries is the date of injury. Mr. Terzani's initial 1987 injury occurred well before the alleged onset date of November 5, 1998. The record does not indicate why Mr. Terzani stopped working after November 5, 1998; presumably he did not return to work because of his pain.

When the onset date is unclear, the ALJ must call a medical expert to assist in determining

the date. SSR 83-20; *Armstrong v. Commissioner of the Social Security Administration*, 160 F.3d 587, 589-90 (9th Cir. 1998). If the medical record is complete, the ALJ may infer an onset date from that record. *Id.* If the record is not complete, the ALJ has a duty to develop that record. *Id.*

The record in this case is well developed. The Social Security Administration wrote to Mr. Terzani's various practitioners 17 times between August 2000 and May 2003 requesting relevant medical evidence for the proceedings. Tr. 192, 208, 231, 269, 320, 343, 353, 379, 380, 389, 398, 427, 461, 472, 487, 493, 552. I conclude that the record supports the onset date found by the ALJ.

**CONCLUSION**

The Commissioner's decision that Mr. Terzani was not disabled between November 5, 1998, and October 15, 2001, and is not entitled to benefits under Title II of the Social Security Act during this period, is based upon correct legal standards and supported by substantial evidence. I recommend the Commissioner's decision be affirmed.

**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due April 6, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due April 20, 2006, and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 22nd day of March, 2006.

/s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge